# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 2447 | DATE | 3/27/2001 |
| CASE TITLE | CATALINA MARKETING INTL. INC. vs. COOLSAVINGS.COM, INC. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motion for summary judgment is granted [39-1].
(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 28 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| LG | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CATALINA MARKETING INTERNATIONAL, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COOLSAVINGS.COM, INC., ) <br> ) <br> Defendant. ) <br> ) | No. 00C 2447 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Catalina Marketing International, commenced a patent infringement action against Coolsavings.com (Coolsavings) in relation to a system for the distribution of coupons. Before this Court is defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).

Summary judgment is proper if" the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). All the evidence and the reasonable inferences that may be drawn from the evidence is viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In June, 1987, United States Patent 4,674,041 was issued to Chester Lemon and Bill Kelley (Lemon patent). (Def.'s 56.1(a)(3) Statement ¶ 8). The Lemon patent pertains to a system for

monitoring and controlling the distribution of coupons. (Id., at ¶ 9). Plaintiff alleges that Coolsavings coupon distribution system infringes the Lemon patent.

In June, 1998, the United States Patent Office issued Patent No. 5,761,648 for the Coolsavings coupon distribution system. (Def.'s 56.1(a)(3) Statement ¶ 38). Coolsavings is a method of monitoring and controlling the distribution of coupons from the Coolsavings' website. Consumers utilizing the Coolsavings system must log on to the Coolsavings website. (Id., at ¶¶ 33-35). After logging on to the Coolsavings website, consumers may choose to print coupons of their choice. The selected coupons are generated by a centralized system that also monitors the coupons selected by the consumer and prepares reports setting forth the demographic characteristics of the consumers that selected the coupon. (Id., at ¶ 32). The Coolsavings system does not place terminals in predesignated locations. Rather, the system offers coupons from any location that the consumer may have access to a personal computer with a modem. (Id., at ¶ 36).

A patent infringement analysis consists of two steps. In the first step, referred to as claim construction, the meaning and scope of the patent claims asserted to be infringed are determined. The second step entails proving the infringement by comparing the properly construed claims to the device accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*Markman*).

I. Claim Construction

To construe a patent claim, a court analyzes the intrinsic evidence of the record, which includes the claims and written description of the patent itself and the prosecution history if it is in evidence. *Biovail Corp. v. Andrx Pharmaceuticals, Inc.*, 239 F.3d 1297, 1300 (Fed. Cir. 2001). Reliance on extrinsic evidence is improper if the intrinsic evidence unambiguously describes the

scope of the patented invention. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (*Vitronics*).

Terms in a claim are to be given their ordinary and accustomed meaning. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362 (Fed. Cir. 1999) (*K-2*). The ordinary and accustomed meaning of a disputed claim term is presumed to be the correct one unless a different meaning is clearly and deliberately set forth in the intrinsic evidence, or the ordinary and accustomed meaning of the disputed term would deprive the claim of clarity – then extrinsic evidence may be used to ascertain the proper meaning of the term. *K-2*, 191 F.3d at 1362-63. Limitations that do not exist in a claim should not be read into that claim. However, claim language must be read consistently with the totality of the patent's applicable prosecution history. *Biovail*, 239 F.3d at 1300. "In judicial 'claim construction' the court must achieve the same understanding of the patent ... as would a person experienced in the technology of the invention. Such a person would not rely solely on a dictionary of general linguistic usage, but would understand the claims in light of the specification and the prior art, guided by the prosecution history and experience in the technological field." *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999).

In the instant case, the construction of claims 1 and 25 of the Lemon patent, which are included in all other claims of plaintiff's patent, are disputed by the parties. Claims 1 and 25 state: "A system for controlling the selection and dispensing of product coupons at a plurality of remote terminals located at predesignated sites such as consumer stores...." Defendant argues that "predesignated sites such as consumer stores" requires that the location of the terminal be pre-established in a specific location at the point of sale. Plaintiff argues that "predesignated sites" should be defined as "being places marked out for the activity of selecting and dispensing coupons

before such activity can take place," and "such as a consumer store" is merely an example of one possible location of the terminals, of which could include a person's home due to the ability to shop over the Internet.

"Predesignate" is defined as "to designate beforehand." Webster's New Int'l Dictionary 1785 (3rd 1986). "Site" is defined as "the original or fixed position of a thing." Webster's New Int'l Dictionary 2128 (3rd 1986). Accordingly, the ordinary and accustomed meaning of "predesignated site" in this context means "to designate beforehand the original or fixed position of a thing." The term "such as" is defined as "of a kind or character about to be indicated, suggested, or exemplified; for instance." Webster's New Int'l Dictionary 125, 2283 (3rd 1986). The definitions of these terms demonstrate that the terminal must be placed at a place that has been designated beforehand, for example a consumer store. Therefore, the pertinent question is whether "such as a consumer store" is to be construed, narrowly, to mean "at the point of sale" or, broadly, to merely be an example of a possible location, such that the terminal could be placed anywhere.

The "Abstract" of the Lemon patent states: "A system for monitoring the distribution of product coupons from a plurality of remote terminals located at the point of sale is provided." (Emphasis added). The "Summary of the Invention" states that "[b]y providing point of sale distribution ...[a] stand alone coupon dispensing terminal is provided at each retail store ... the present invention ... benefits the consuming public by providing a convenient means of obtaining coupons at the point of purchase." (Emphasis added). The "Description of the Preferred Embodiments" states: "Each of terminals T is a stand alone unit to be placed at a remote location such as a retail grocery store." (Emphasis added).

During the prosecution of the Lemon patent, the inventors responded to the examiner's

4

rejection of the invention, in part, stating, "The invention is a system for controlling the selection and dispensing of product coupons by stand alone <u>terminals</u> <u>located</u> <u>in</u> <u>stores</u>." (Emphasis added). In response to the second rejection by the Patent Office, the inventors stated, "The concepts of this invention go to the very core of couponing, beginning with the <u>dispensing of coupons onsite</u> and controlling coupons credibility by providing the ultimate in control over the origin of coupons." (Emphasis added). The inventors also included the declaration of Peter Engel in their response to the Patent Office's rejection of their patent. In the declaration, Peter Engel stated that the Lemon patent would have a substantial impact on the coupon industry because manufacturers would not have to mail coupons to homes or provide them in packaging of products sold because the "coupons may actually be <u>offered</u> <u>on</u> <u>site</u> to persons most likely to redeem them." (Emphasis added).

The claims, specification, and file history support defendant's reading of the claims. All of these sources indicate that the terminal is to be placed at a predesignated site at the point of sale, *i.e.*, a consumer store. *See Young Dental Mfg. Co. v. Q3 Special Products, Inc.*, 112 F.3d 1137, 1142-43 (Fed. Cir 1997) (specification and prosecution history support defendant's more narrow reading of the claim); *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) (rejecting broad definition of the term "when" because the specification provided overwhelming evidence of a narrower interpretation).

II. Infringement

"In order to prove infringement, a patentee must show that every limitation of the claims asserted to be infringed is found in the accused device." *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1565 (Fed. Cir. 1997). As a matter of law, an accused device cannot infringe if even a single limitation is not satisfied. *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1349 (Fed. Cir.

5

1998).

Infringement is proved either literally or under the doctrine of equivalents. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir.1998). "To establish literal infringement, every limitation set forth in a claim must be found in the accused product, exactly." *Southwall Technologies, Inc. v. Cardinall IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). Where, as in the present case, the structure of the product is undisputed, the "literal infringement analysis collapses into a claim construction" and, as a matter of law, is amenable to summary judgment. *Desper Prods., Inc. v. Qsound Labs*, 157 F.3d 1325, 1332-333 (Fed. Cir. 1998) (*Desper*).

The Lemon patent requires a "plurality of remote terminals at predesignated sites such as consumer stores." Conversely, the terminals contemplated to be used to obtain coupons from defendant's invention consist of any and all computers with access to the Internet. Such terminals may be in a person's home or other locations that offer access to the Internet, *i.e.*, schools or public libraries. These locations are not predetermined sites in which defendant placed the terminal. Furthermore, the terminal is not located at the point of sale. Therefore, defendant's invention does not include every limitation set forth in the Lemon patent, and plaintiff's literal infringement claim fails.

Under the doctrine of equivalents, an accused device infringes only if it possesses all of the limitations of the claim either literally or equivalently. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998). The "doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson v. Davis*, 520 U.S. 17, 29 (1997) (*Davis*). Furthermore, application of the doctrine of equivalents cannot be used to erase limitations from the claim. *Davis*, 520 U.S. at 29. The differences between the accused device and the claim limitation

6

must be "insubstantial" to possess an equivalent claim limitation. *Desper*, 157 F.3d at 1338. This analysis generally turns on whether the accused device performs substantially the same function in substantially the same way to achieve substantially the same result. *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1222 (Fed. Cir. 1996).

Here, the Lemon patent coupon distribution system requires a consumer to retrieve the coupon from a terminal that has been placed at a predesignated site. Whereas, to retrieve a coupon from the Coolsavings coupon distribution system, the consumer must log on to the Internet from a terminal that need not be placed at a predesignated site, *i.e.*, the consumer's own home. In addition, because the Coolsavings' system requires the use of the Internet, the consumer's computer must contact the service system (host) before each coupon is created and sent to the consumer. Whereas, the Lemon patent system, as a stand-alone unit, can operate without contact with the host. Accordingly, defendant does not infringe the Lemon patent under the doctrine of equivalents.

Furthermore, the prosecutorial history discloses that the patentee of the Lemon patent made amendments and statements during the prosecution that would lead a reasonable competitor to objectively conclude that the location of the Lemon patent terminal was at a predesignated store, not in a person's home. The doctrine of prosecution history estoppel prohibits the application of equivalents and precludes a patentee from obtaining coverage under the doctrine of equivalents for coverage of subject matter that was relinquished during the prosecution of the patent. *General Elec. Co. v. Nintendo Co.*, 179 F.3d 1350, 1362 (Fed. Cir. 1999). Prosecution history estoppel occurs as a result of arguments made during prosecution of the patent that show a clear and unmistakable surrender of subject matter, through amendments made to overcome patentability rejections (*Bayer AG v. Elan Pharmaceutical Research Corp.*, 212 F.3d 1241, 1251 (Fed. Cir. 2000)) or through

7

unequivocal arguments or assertions made during patent prosecution (*Desper*, 157 F.3d at 1338). The determination of what subject matter was surrendered is an objective one, measured from the vantage point of what a competitor reasonably would conclude the patentee had relinquished in order to secure the patent. *Augustine Medical, Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1299 (Fed. Cir. 1999).

As discussed above, during the prosecution of the Lemon patent, the inventors repeatedly indicated the terminals would be located in stores and stressed the importance of dispensing the coupons "onsite". Given these statements and averments, one of ordinary skill in the art would conclude that the location of the terminal was relinquished.

For the reason set forth above, defendant's Motion for Summary Judgment is granted.

Dated: March 27, 2001

JOHN W. DARRAH
United States District Judge