# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 2447 | DATE | 7/2/2003 |
| CASE TITLE | CATALINA MARKETING INTERNATIONAL vs. COOLSAVINGS.COM, INC. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. This Court lacks personal jurisdiction over Landmark. Accordingly, Landmark's motion to dismiss is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | JUL 03 2003 | | |
| | Notified counsel by telephone. | | date docketed | | 187 |
| ✓ | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | | |
| | Copy to judge/magistrate judge. | 03 JUL -2 PM 7:02 | | date mailed notice | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CATALINA MARKETING INTERNATIONAL, )
INC., )
 )
      **Plaintiff,** )
 )
      v. ) No. 00 C 2447
 )
COOLSAVINGS.COM, INC., COOLSAVINGS, INC., ) Judge John W. Darrah
LANDMARK COMMUNICATIONS, INC., and )
LANDMARK VENTURES VII, LLC, )
 )
      **Defendants.** )
 )

DOCKETED JUL 03 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Catalina Marketing International ("Catalina") filed a patent infringement suit against Defendants, Coolsavings.com, Inc. and Coolsavings, Inc. (collectively "Coolsavings"). Subsequently, Catalina amended their complaint and added Defendants Landmark Communications, Inc. ("Communications") and Landmark Ventures VII, Inc. ("Ventures")(collectively "Landmark"). Landmark has moved to dismiss the claims against them for lack of personal jurisdiction.

Communications is a Virginia corporation with its principal place of business in Norfolk, Virginia. Communications has no offices or employees in the State of Illinois. Communications does not maintain any bank accounts in the State of Illinois, does not own or lease any personal or real property in Illinois, and has no telephone listing in any directory in Illinois. Communications also does not sell any products or services in the State of Illinois.

Ventures is a Delaware corporation with its principal place of business in Las Vegas, Nevada. Ventures owns no real or personal property in Illinois. Ventures has no offices, employees, bank

accounts, or telephone listings within Illinois. Ventures is a holding company for the sole purpose of owning investments. It has no assets or business operations other than its ownership of Coolsavings stock.

In or around July 2001, Landmark began to extend loans to Coolsavings. From June through July 2001, Landmark loaned Coolsavings a total of $5 million and obtained a 20% beneficial equity stake in Coolsavings. The loans were conditioned upon Coolsavings' granting Landmark a security interest in all of Coolsavings' assets. Landmark filed a security interest with the United States Patent and Trademark Office against all of Coolsavings' issued patents. Landmark also filed a blanket lien against all of Coolsavings' assets in Cook County, Illinois. Landmark has increased its beneficial ownership of Coolsavings to 86%. Landmark invested a total of $27 million into Coolsavings.

Catalina contends that this Court has personal jurisdiction over Landmark because Landmark is an alter ego of Coolsavings.

Catalina alleges patent infringement; therefore, Federal Circuit law is controlling with deference given to the state's highest court to determine whether personal jurisdiction over Landmark and Ventures exits. *See LSI Indus. Inc. v. Hubbell Lighting*, 232 F.3d 1369, 1371 (2000 Fed. Cir.) (*LSI Indus.*). The plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997) (*RAR*). The allegations in the complaint are taken as true unless controverted by the defendants' affidavits. Any conflicts in the affidavits submitted by the parties are resolved in the plaintiff's favor. *See Berthold Types Ltd. v. European Mikrograph Corp.*, 102 F. Supp. 2d 928, 930 (N.D. Ill. 2000), citing *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

In cases involving federal questions, a plaintiff must show that (1) the defendant is amendable to service of process and (2) the exercise of personal jurisdiction over the defendant comports with due process under the Fifth Amendment of the United States Constitution. *Euromarket Designs, Inc. v. Crate & Barrel, Ltd.*, 96 F. Supp. 2d 824, 833-34 (N.D. Ill. 2000) (*Euromarket*).

The Illinois long-arm statute provides, in part, that personal jurisdiction may be exercised over defendants that commit certain enumerated acts within Illinois or "on any other basis ... permitted by the Illinois Constitution and the Constitution of the United States". 735 ILCS § 5/2-209(a)(2), (c). Because of this broad statute, "the statutory analysis collapses into a due process inquiry, and [the court] need not consider whether the defendants engaged in any of the acts enumerated in the long-arm statute". *Euromarket*, 96 F. Supp. 2d at 834, *quoting LFG, LLC v. Zapata Corp.*, 78 F. Supp. 2d 731, 735 (N. D. Ill. 1999).

The Fourteenth Amendment Due Process Clause permits a court to exercise jurisdiction over a nonresident defendant only if the defendant has had "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), *quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940); *Neuman & Assoc. v. Florabelle Flowers*, 15 F.3d 721, 725 (7th Cir. 1994). This determination depends on whether the plaintiff asserts general or specific jurisdiction against the defendant. *RAR*, 107 F.3d at 1277. "General jurisdiction ... is for suits neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has 'continuous and systematic general business contacts' with the forum state." *RAR*, 107 F.3d at 1277. Specific jurisdiction "refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the

3

forum.'" *RAR*, 107 F.3d at 1277, *quoting Helicopteros Nacionales de Columbia, S.A. v. Hall*, 486 U.S. 408 (1984).

In the instant case, Catalina does not allege that Landmark had "continuous and systematic" contact with Illinois. As a result of its failure to raise issues of general jurisdiction in the complaint and in their response to the Motion to Dismiss, Catalina has waived any general jurisdiction arguments. *See RAR*, 107 F.3d at 1277.

Specific jurisdiction exists if: (1) the defendant purposefully availed itself of the privilege of conducting activities in the forum state, (2) the claim arises out of or is related to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair. *See Euromarket*, 96 F. Supp. 2d at 834.

The critical issue in this first requirement is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This requirement is not met if the defendant's conduct and connection with the forum state is the result of "random", "fortuitous", or "attenuated" contacts with the forum state. *See Burger King Corp. v. Redzewicz*, 471 U.S. 462, 475 (1985).

Catalina contends that this requirement is met under the alter ego doctrine.

If a federal court has jurisdiction over a corporation, it has jurisdiction over its alter egos. *See Minnesota Mining & Mfg. Co v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985) (*Eco Chem*). However, "personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Central States, Southeast &*

4

*Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (*Central States*). The determination the court must make is just how much control is enough to constitute "an unusually high degree of control". In making this determination, the court must be mindful that the general rule assumes some degree of control, direction, and supervision of a subsidiary in a normal parent/subsidiary relationship. *See IDS Life Ins. Co. v. America Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) (*IDS*).

Two different approaches are utilized in determining how much control is enough. *See LaSalle Nat'l Bank v. Vitro*, 85 F. Supp. 2d 857, 864 (N.D. Ill. 2000) (*LaSalle*); *Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 866 (N.D. Ill. 1998) (*Gruca*). The first approach is the traditional test for piercing the corporate veil. *See IDS*, 136 F.3d at 540; *LaSalle*, 85 F. Supp. 2d at 864; *Gruca*, 19 F. Supp. 2d at 866. The second approach is whether the parent company has substantially controlled the subsidiary. *See LaSalle*, 85 F. Supp. 2d at 865; *Gruca*, 19 F. Supp. 2d at 866.

When determining whether to pierce the corporate veil, a court applies the law of the state of incorporation. *See Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 933 (7th Cir. 1996). Here, Landmark is a Virginia corporation; therefore, Virginia law applies to Landmark. Ventures is a Delaware corporation; therefore, Delaware law applies to Ventures.

Pursuant to Virginia law, only an extraordinary exception justified disregarding the corporate entity and piercing the corporate veil. *See Greenberg v. Commonwealth*, 255 Va. 594, 604 (1998). Relevant factors in determining whether to pierce the corporate veil include: (1) whether the corporate capitalization is reasonably adequate for the venture, (2) failure to observe corporate formalities, (3) non-payment of dividends, (4) the insolvency of the debtor corporation at the time,

(5) siphoning of funds of the corporation by the dominate stockholder, (6) non-functioning of other officers or directors, (7) absence of corporate records, and (8) whether the corporation is merely a facade for the dominant shareholders. *In re County Green, L.P.*, 438 F. Supp. 701, 705-06 (W.D. Va. 1977).

Under Delaware law, the corporate veil may be pierced where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of the parent. *See Geyer v. Ingersoll Pub. Co.*, 621 A.2d 784, 678 (Del. Ch. 1992). Similar to the factors under Virginia law, relevant factors under Delaware law in determining whether the subsidiary is merely an instrumentality or alter ego include: (1) whether the dominant shareholders siphoned corporate funds, (2) whether the corporation is a facade for the dominant shareholders, (3) whether the corporation was solvent and adequately capitalized, and (4) whether corporate formalities were followed, including payment of dividends and separate corporate records. *See Alberto v. Diversified Group, Inc.*, 55 F.3d 201, 205 (5th Cir 1995), *quoting Harco Nat'l Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537 (Del. Ch. Sept. 19, 1989). Piercing the corporate veil may only be done if it is in the interest of justice "when such matters of fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation ... are involved". *Pauley Petroleum Inc. v. Continental Oil Co.*, 239 A.2d 629, 633 (Del. 1968).

Here, there are no allegations of failure to observe corporate formalities, non-payment of dividends, siphoning of funds of the corporation by the dominant stockholder, or absence of corporate records and formalities. Instead, Catalina identifies several other "factors" which it contends demonstrate that Landmark is the alter ego of Coolsavings.

Catalina first contends that Coolsavings' gross undercapitalization and insolvency

demonstrate that the corporate veil should be pierced. Catalina argues that in 2001, when Coolsavings changed its place of incorporation to Delaware, Coolsavings was grossly undercapitalized and insolvent. However, Catalina does not argue or demonstrate that at the time that Coolsavings was initially incorporated, in 1994, Coolsavings was undercapitalized or insolvent. Contrary to such an argument, Catalina asserts that over $100 million was invested in development at Coolsavings. Accordingly, at the time of initial incorporation, Coolsavings was neither undercapitalized or insolvent. Furthermore, Catalina has failed to demonstrate that Coolsavings was undercapitalized in 2001, when Coolsavings changed its place of incorporation to Delaware. At that time, the present litigation was no longer pending as summary judgment had been entered in favor of Coolsavings. In light of that disposition, Coolsavings' significant obligations included bank debts of approximately $5 million and approximately $10 million in trade debt. Landmark's investment of $27 million replaced the bank debt with a loan from Landmark and retired all trade debt, leaving $12 million in working capital. Contrary to any status of inadequate capitalization, Landmark invested millions of dollars of additional funds into Coolsavings to try to keep Coolsavings viable.

Catalina also identifies several other "factors" which it believes support a finding that the corporate veil should be pierced. These factors include: (1) Landmark caused Coolsavings to change its incorporation to Delaware; (2) Landmark's ownership of Coolsavings has increased; (3) four of the eleven Coolsavings' Board of Directors are also Landmark Board of Directors; (4) Landmark loans necessary money to Coolsavings; (5) the directors of Coolsavings that are associated with Landmark are involved in many of the daily details involved in operating Coolsavings; (6) Landmark's personnel are involved in Coolsavings' banking; (7) Coolsavings provides numerous reports to Landmark concerning Coolsavings' operations; (8) Landmark has instant access to

Coolsavings' financial information; (9) several systems of Landmark and Coolsavings are electronically linked, allowing Landmark access to Coolsavings' data; (10) Landmark's audit committee reviewed Coolsavings' accounting practices; (11) Landmark's legal counsel acts as if Coolsavings is part of Landmark; (12) Landmark executives who are not associated with Coolsavings participate in the setting of Coolsavings' yearly operating budget; (13) Landmark has referred to Coolsavings as a "division"; and (14) Landmark has obtained a security interest in all of Coolsavings' assets.

These factors cited by Catalina fail to demonstrate that the corporate veil should be pierced. Coolsavings' change of incorporation does not demonstrate Landmark's control over Coolsavings. Coolsavings was incorporated seven years earlier, before Landmark was involved. Landmark's increased ownership in Coolsavings is not unique and exists in most parent and subsidiary relationships. *See United States v. Bestfoods*, 524 U.S. 51, 61-62 (1998) (*Bestfoods*); *Joiner v. Ryder Sys. Inc.*, 966 F. Supp. 1478, 1484 (C.D. Ill. 1996) (*Joiner*). Similarly, it is common and appropriate that some directors of the parent company also serve as directors of its subsidiary. *Bestfoods*, 524 U.S. at 69. Furthermore, these "shared" board members would have a role in Coolsavings and would be expected to be involved in decisions affecting Coolsavings. *See IDS*, 136 F.3d at 540; *Gruca*, 19 F. Supp. 2d at 870.

Coordinated banking arrangements between parent corporations and their subsidiaries are also common and do not justify piercing the corporate veil. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459 (2nd Cir. 1995) (*Fletcher*); *Joiner*, 966 F. Supp. at 1486. Providing information to the parent corporation and having access to the subsidiary's information also does not demonstrate unusual control over and dominion of a subsidiary. It is common business practice to monitor a subsidiary's

performance, consult with corporate officers, offer advice, and have general oversight over a subsidiary. *See Bestfoods,* 524 U.S. at 72 (normal parent relationship involves "monitoring the subsidiary's performance); *United States v. Elgin, Joliet & E. Ry. Co.,* 298 U.S. 492, 503-04) (1936); *Quarles v. Fuqua Indus., Inc.,* 504 F.2d 1358, 1363-64 (10th Cir. 1974). It is also common practice that certain functions, such as accounting and legal services, be shared within a corporate family. Such shared functions are insufficient to pierce the corporate veil. *See Allstate Motor Club, Inc. v. SHL Systemhouse, Inc.,* 1998 WL 575279 (N.D. Ill. Sept. 1, 1998); *Mi-Jack Prods., Inc. v. Taylor Group, Inc.,* 1997 WL 441796 (N.D. Ill. July 30, 1997); *Unison Indus. v. Lucas Indus.,* 1994 WL 148788 (N.D. Ill. April 22, 1994). This same reasoning applies to oversight of the subsidiary's budgeting process. *See Bestfoods,* 524 U.S. at 72; *Joiner,* 966 F. Supp. at 1485.

Landmark's reference to Coolsavings as a division in two internal e-mails also fails to demonstrate unusual control by Landmark. Such references fail to demonstrate that a subsidiary is a mere instrumentality of its parent company. *See Fletcher,* 68 F.3d at 1460.

Lastly, Catalina argues that Landmark's security interest in Coolsavings' assets is an important factor in considering the alter ego doctrine. While this is a factor for the Court to consider, the facts of the present case demonstrate that Landmark provided Coolsavings with a secured loan that paid off other secured loans that already existed. As such, these assets were already encumbered. Furthermore, Landmark's remaining $22 million equity investment in Coolsavings will be subordinate to the claims of all creditors, including Catalina, in the event that it recovers a judgment in the instant case. Accordingly, this factor does not favor piercing the corporate veil.

The second approach for determining if sufficient control existed is whether the parent company has substantially controlled the subsidiary. *See LaSalle,* 85 F. Supp. 2d at 865; *Gruca,* 19

F. Supp. 2d at 866. Factors included in this analysis include: whether the parent company arranges financing for and capitalization of the subsidiary; whether officers and directors are the same; whether separate books, tax returns, and financial statements are kept; whether the parent company holds its subsidiary as an agent; the method of payment made to the parent by the subsidiary; and how much control is exerted by the parent company over the daily affairs of the subsidiary. *See LaSalle*, 85 F. Supp. 2d at 865; *Gruca*, 19 F. Supp. 2d 862, 867.

Here, there are no allegations that Coolsavings did not keep separate books, tax returns, and financial statements; that Landmark holds Coolsavings as an agent; or that the method of payment made to Landmark by Coolsavings establishes control by Landmark. Landmark's infusion of cash to enable Coolsavings to stay afloat does not demonstrate that Landmark has substantially controlled Coolsavings. *See Caccamo v. Greenmarine Holdings*, 2002 WL 1466818 (N.D. Ill. July 3, 2002). The parties do not dispute that there were some shared directors and officers. As to the last factor, while Catalina alleges that Landmark made decisions affecting Coolsavings, the allegations do not establish or raise the reasonable inference that Landmark exerted control over the daily affairs of OMC. The shared board members and the effect the shared board members had on issues affecting Coolsavings are consistent with the normal relationship between a parent company and its subsidiary, in which parent companies may "control, direct, and supervise subsidiaries to some extent". *See IDS*, 136 F.3d at 540; *LaSalle*, 85 F. Supp. 2d at 866.

Lastly, Catalina argues that Landmark's corporate form should be ignored because the "scheme" set up by Landmark is unfair and violates public policy. The basis of Catalina's argument is that it would be unfair to Catalina to apply the alter ego doctrine because it would leave Catalina without a remedy in light of Landmark's security interests in Coolsavings' assets and it could cause

Catalina to "chase" after Landmark. However, as discussed above, Landmark's security interest in the loaned money simply replaced already existing security interests.

Based on the above, this Court lacks personal jurisdiction over Landmark. Accordingly, Landmark's Motion to Dismiss is granted.

Dated: July 2, 2003

JOHN W. DARRAH
United States District Judge